1    KAMALA D. HARRIS
     Attorney General of California
2    DANE R. GILLETTE
     Chief Assistant Attorney General
3    GARY W. SCHONS
     Senior Assistant Attorney General
4    KEVIN VIENNA
     Supervising Deputy Attorney General
5    CHRISTOPHER P. BEESLEY
     Deputy Attorney General
6    State Bar No. 236193
      110 West A Street, Suite 1100
7     San Diego, CA 92101
     P.O. Box 85266
8     San Diego, CA 92186-5266
     Telephone:  (619) 645-2567
9     Fax:  (619) 645-2581
     E-mail:  Christopher.Beesley@doj.ca.gov
10   *Attorneys for Respondent*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PAUL GORDON WHITMORE,** | 09-1324 MMM (WVG) |
| Petitioner, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS** |
| **v.** | |
| **MATTHEW CATE, Warden,** | |
| Respondent. | |

# TABLE OF CONTENTS

**Page**

Memorandum of points and authorities ................................................................................... 1

Statement of the case ............................................................................................................... 1

I.     The anti-terrorism and effective death penalty act of 1996 governs this case ........ 5

II.    The state courts reasonably applied controlling United States Supreme
       Court authority in holding that petitioner's confrontation rights were
       unaffected when the trial court admitted petitioner's internet chat with a
       danish citizen who did not testify at trial because the dane's statements in
       the chat were not testimonial ................................................................................... 7

       A.     Relevant background ................................................................................... 7

       B.     Legal discussion ......................................................................................... 7

III.   Petitioner's claim that the trial court erred in admitting various pieces of
       evidence from Jensen's computer fails to state a federal question ...................... 10

IV.    The state courts reasonably concluded substantial evidence supported the
       child pornography production convictions, the tying and binding
       enhancement findings, and the sodomy conviction for count two ...................... 11

       A.     Substantial evidence supported the child pornography convictions ........ 13

       B.     Substantial evidence supported the tying and binding enhancement ........ 14

       C.     Substantial evidence supported the sodomy conviction for count
              two ........................................................................................................... 16

V.     Petitioner's claim that the trial court failed to give the jury a unanimity
       instruction fails to state a federal question ........................................................ 17

VI.    Petitioner failed to exhaust his claims that the trial court gave the jury
       defective verdict forms and that the jury's procedure for reaching a verdict
       as to the multiple victim enhancement was flawed ............................................ 19

VII.   The state courts reasonably concluded, consistent with controlling supreme
       court precedent, that the trial court did not err in providing the jury with
       neutral verdict worksheets during deliberations ................................................ 20

       A.     Factual background ................................................................................... 20

       B.     Legal discussion ....................................................................................... 20

VIII.  The California state courts reasonably concluded that there was no basis for
       severance ............................................................................................................. 22

       A.     Procedural background ............................................................................. 22

       B.     Legal discussion ....................................................................................... 22

IX.    Petitioner has failed to demonstrate an accumulation of errors that deprived
       him of a fair trial ................................................................................................. 25

Conclusion ............................................................................................................................ 27

i

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Apodaca v. Oregon*
406 U.S. 404, 92 S. Ct. 1628, 32 L. Ed. 2d 184 (1972) ........................................ 17

*Baldwin v. Reese*
541 U.S. 27, 124 S. Ct. 1347, 158 L. Ed. 2d 64 (2004) ........................................ 19

*Bean v. Calderon*
163 F.3d 1073 (9th Cir. 1998) ........................................................................ 23

*Bradshaw v. Richey*
546 U.S. 74, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005) ........................................ 16

*Carella v. California*
491 U.S. 263, 109 S. Ct. 2419, 105 L. Ed. 2d 218 (1989) ...................................... 16

*Crawford v. Washington*
541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004) .................................. 7, 8, 9

*Cupp v. Naughten*
414 U.S. 141, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973) ........................................ 16

*Davis v. Washington*
547 U.S. 813, 126 S.Ct. 2266, 165 L. Ed. 2d 224 (2006) .................................. 7, 8, 9

*Davis v. Woodford*
384 F.3d 628 (9th Cir. 2004) ........................................................................ 23

*Donnelly v. DeChristoforo*
416 U.S. 637, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974) ........................................ 26

*Draper v. Washington*
372 U.S. 487, 83 S. Ct. 774, 9 L. Ed. 2d 899 (1963) ........................................ 11

*Estelle v. McGuire*
502 U.S. 67-68, 112 S. Ct. 475; 116 L. Ed. 2d 385 (1991) .............................. 10, 16

*Griffin v. Illinois*
351 U.S. 12, 76 S. Ct. 585 100 L. Ed. 891 (1956) ............................................ 11

*Hicks v. Oklahoma*
447 U.S. 343, 100 S. Ct. 2227, 65 L. Ed. 2d 175 (1980) .................................. 18, 19

# TABLE OF AUTHORITIES
### (continued)

Page

*Irvin v. Dowd*
366 U.S. 717, 81 S. Ct. 1639, 6 L. Ed. 2d 751 (1961) ............................................................ 20

*Jackson. Juan H. v. Allen*
408 F.3d 1262 (9th Cir. 2005) ............................................................ 12, 13, 14

*Jackson v. Virginia*
443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) ............................................................ passim

*James v. Borg*
24 F.3d 20 (9th Cir. 1994) ............................................................ 11

*Jenkins v. United States*
380 U.S. 445, 85 S. Ct. 1059, 13 L. Ed. 2d 957 (1965) ............................................................ 21

*Johnson v. Sublett*
63 F.3d 926 (1995) ............................................................ 10

*Lambert v. Blodgett*
393 F.3d 943 (9th Cir. 2004) ............................................................ 6

*Larson v. Palmateer*
515 F.3d 1057 (2008) ............................................................ 10

*Lewis v. Jeffers*
497 U.S. 764, 111 L. Ed. 2d 606, 110 S. Ct. 3092 (1990) ............................................................ 26

*Lindh v. Murphy*
521 U.S. 320, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997) ............................................................ 5

*Lockyer v. Andrade*
538 U.S. 63, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003) ............................................................ 6

*Lowenfield v. Phelps*
484 U.S. 231, 108 S. Ct. 546, 98 L. Ed. 2d 568 (1988) ............................................................ 20, 21

*Miller-El v. Cockrell*
537 U.S. 322, 123 S. Ct. 1029, 154 L.Ed. 2d 931 (2003) ............................................................ 4

*Parle v. Runnels*
387 F.3d 1030 (9th Cir. 2004) ............................................................ 26

*People v. Bradford*
15 Cal. 4th 1229 (1997) ............................................................ 23

iii

# TABLE OF AUTHORITIES
### (continued)

**Page**

*People v. Cuevas*
12 Cal. 4th 252, 48 Cal. Rptr. 2d 135 (1995)...................................................................... 12

*People v. Johnson*
26 Cal.3d 557 (1980) ............................................................................................................ 12

*People v. Sandoval*
4 Cal. 4th 155 (1992) ............................................................................................................ 23

*People v. Sturm*
(2006) 37 Cal.4th 1218 ........................................................................................................ 21

*Rock v. Arkansas*
483 U.S. 44, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987)................................................... 24, 25

*Rose v. Lundy*
455 U.S. 509, 71 L. Ed. 2d 379, 102 S. Ct. 1198 (1982) ..................................................... 19

*Sandoval v. Calderon*
241 F.3d 765 (9th Cir. 2001).................................................................................................. 23

*Sumner v. Mata*
449 U.S. 539, 101 S. Ct. 764; 66 L. Ed. 2d 722 (1981) .......................................................... 4

*Taylor v. Maddox*
366 F.3d 992 (9th Cir. 2004)..................................................................................................... 6

*United States v. Alexander*
135 F.3d 470 (7th Cir. 1998)................................................................................................... 25

*United States v. Alosa*
14 F.3d 693 (1st Cir. 1994) ..................................................................................................... 24

*United States v. Balzano*
916 F.2d 1273 (7th Cir. 1990)................................................................................................. 25

*United States v. Fenton*
367 F.3d 14 (1st Cir. 2004) ..................................................................................................... 25

*United States v. Lane*
474 U.S. 438, 88 L. Ed. 2d 814, 106 S. Ct. 725 (1986) ................................................... 23, 24

*United States v. McCaleb*
552 F.3d 1053 (9th Cir. 2009)............................................................................................ 21, 22

iv

## TABLE OF AUTHORITIES
### (continued)

Page

*United States v. Nolan*
700 F.2d 479 (9th Cir. 1983)..................................................................... 25

*United States v. Tolliver*
(7th Cir. 2006) 454 F.3d 660....................................................................... 8

*Wainwright v. Goode*
464 U.S. 78, 104 S. Ct. 378, 78 L. Ed. 2d 187 (1983) ............................. 10

*Weaver v. Thompson*
197 F.3d 359 (9th Cir. 1999)........................................................................ 5

*Whelchel v. Washington*
232 F.3d 1197 (9th Cir. 2000)................................................................... 25

*Williams v. Taylor*
529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000) ................. 6, 12

*Ylst v. Nunnemaker*
501 U.S. 797, 111 S. Ct. 2590; 115 L. Ed. 2d 706 (1991) ........................ 6

**STATUTES**

28 U.S.C.
§ 2254(d) ........................................................................................... 6, 12
§ 2254(d)(1) ............................................................................................ 6
§ 2254(d)(2) ............................................................................................ 6
§ 2254(e)(1) ......................................................................................... 4, 6

Anti-Terrorism And Effective Death Penalty Act Of 1996 ........................ 5

Cal. Pen. Code
§ 136.1(b)(1) ........................................................................................... 1
§ 269 ....................................................................................................... 1
§ 288.2(b) ............................................................................................... 1
§ 288(a) .................................................................................................. 1
§ 311.4(b) .......................................................................................... 1, 13
§ 647.6(a) ............................................................................................... 1
§ 667.61(a) ............................................................................................. 1
§ 667.61(c) ............................................................................................. 1
§ 667.61(e) ............................................................................................. 1
§ 954 ..................................................................................................... 23

**CONSTITUTIONAL PROVISIONS**

California Constitution Article I, § 16 ...................................................... 17

v

## TABLE OF AUTHORITIES
**(continued)**

Page

United States Constitution
    Fifth Amendment ........................................................................................... 25
    Sixth Amendment ............................................................................................. 7
    Fourteenth Amendment............................................................................. 16, 18

vi

# MEMORANDUM OF POINTS AND AUTHORITIES

## STATEMENT OF THE CASE

On November 30, 2005, a jury in San Diego County convicted Petitioner of 21 counts of Lewd Acts Upon a Child (Cal. Penal Code § 288(a); counts 1, 9-11, 14-18, 24, 29, 33, 37, 38, 43, 44, 46, 48-50); nine counts of Aggravated Sexual Assault of a Child (Cal. Penal Code § 269; counts 2-6, 28, 34, 39, 45); 18 counts of Posing a Child for Pornography Production (Cal. Penal Code § 311.4(b); counts 7, 8, 13, 20-23, 25-27, 30-32, 35, 40-42, 55); and one count each of Exhibiting Harmful Matter to a Minor (Cal. Penal Code § 288.2(b); count 51), Annoying or Molesting a Child (Cal. Penal Code § 647.6(a); count 52), and Attempting to Dissuade a Witness from Reporting a Crime (Cal. Penal Code § 136.1(b)(1); count 54).  With respect to five of the lewd acts (counts 1, 9, 10, 33, and 37), the jury also found that Petitioner tied or bound his victim and committed offenses described in the One Strike law (Cal. Penal Code § 667.61(c)) against more than one victim, within the meaning of California Penal Code section 667.61(a), (c), and (e).  As to the remainder of the lewd act counts, the jury found that Petitioner committed an offense described in the One Strike law against more than one victim, within the meaning of section 667.61(b), (c), and (e).  (Lodgment 1 [Clerk's Transcript (CT)] 6 CT 1275-1326; Lodgment 2 [Reporter's Transcript (RT)] 28 RT 3493-3510.)  On February 9, 2006, the court sentenced appellant to 467 years and 8 months to life in prison.  (6 CT 1329-1338, 1342; 29 RT 3620-3638.)

On direct appeal, Petitioner argued, as he does here, that 1) the state courts violated his confrontation rights by admitting evidence of an Internet chat he had with a Danish national who did not testify at trial; 2) the state courts erred in admitting evidence without a sufficient foundation, adequate authentication, or proper chain of custody and erred in failing to require the transcription of the Internet chat by the court reporter; 3) the evidence was insufficient as to several of the child pornography production counts because the pictures did not depict sexual activity; 4) the court failed to give a unanimity instruction to the jury with respect to the multiple pictures in support of single charges; 5) the language used on the verdict forms as to the tying or binding and multiple victim enhancements was defective because it did not require the jury to

1

make "true" findings; 6) the procedure the jury was to follow in finding the multiple victim enhancements was defective; 7) the evidence was insufficient to establish the tying or binding enhancement; 8) the court invaded the jury's deliberative efforts by providing verdict "worksheets" to aid in keeping track of the counts; 9) the evidence was insufficient to establish the Aggravated Sexual Assault (Sodomy) charged in count 2; 10) the court abused its discretion in failing to sever the child pornography counts from the more severe offenses; and 11) the cumulative effect of the errors was prejudicial.  (Lodgment 3 [Appellant's Opening Brief].)  The Court of Appeal rejected each of the claims and affirmed the judgment in full.  (Lodgment 6 [Opinion].)

Petitioner raised nine of his 11 claims in his Petition for Review in the California Supreme Court.  (Lodgment 7.)  He omitted his claims as to the verdict forms (Claim 5 from the direct appeal) and the procedure used to make the multiple victim enhancement findings (Claim 6 from the direct appeal).  The state high court denied his petition on August 18, 2008. (Lodgment 8.)

On May 26, 2009, Petitioner filed the instant Petition (Doc. 1) in this Court.  On July 16, 2009, this Court ordered Respondent to file a response to the Petition.  (Doc. 13.)

Respondent filed the original Answer (Doc. 19) and lodged all relevant state court documents on October 19, 2009.  In the Answer, Respondent noted that two claims (Claims 5 [defective verdict forms to make special allegation findings], and 6 [deficient procedure for determining multiple victim special allegation]) were unexhausted.  However, Respondent addressed these two unexhausted claims on the merits, in the alternative.

On November 3, 2009, this Court issued a notice (Doc. 21) to Petitioner that in addition to claims 5 and 6, an additional claim (Claim 4 [failure to provide unanimity instruction for counts supported by multiple images]) was unexhausted.  This Court gave Petitioner multiple options on how to proceed and warned that failure to apply one of these options could result in outright dismissal of the Petition.  These options included that Petitioner could 1) demonstrate total exhaustion; 2) voluntarily dismiss the Petition in full; 3) abandon his three unexhausted claims; and 4) apply for a stay of federal proceedings.

1    On November 4, 2009, Petitioner filed a document (Doc. 23) requesting the court to

2    overlook his failure to exhaust the two claims (Claims 5 and 6) Respondent asserted were

3    unexhausted.  In the alternative, Petitioner asked to amend the Petition by omitting claims 5 and 6

4    and further requested an enlargement of time to file his traverse and permission to file a traverse

5    in excess of the page limit.

6    That same day, this Court issued an order (Doc. 26) granting Petitioner's request for an

7    enlargement of time to file the traverse and granted a page limit expansion.  The Court further

8    instructed Petitioner to review its prior notice (Doc. 21) on his failure to exhaust and to make an

9    election on how to proceed with the unexhausted claims.

10   On December 17, 2009, Petitioner filed a motion (Doc. 31) asking to dismiss claims 5 and

11   6.  He articulated that he carefully considered this Court's prior order (Doc. 21) and decided to

12   abandon and dismiss those claims.  Petitioner further requested clarification and reconsideration

13   as to the Court's finding that claim 4 was unexhausted.

14   On December 21, 2009, this Court issued an order (Doc. 32) granting Petitioner's motion to

15   dismiss claims 5 and 6.  The Court again explained why it found claim 4 to be unexhausted and

16   reasserted Petitioner's four options on how to proceed with that claim.

17   On January 21, 2010, Petitioner filed an unopposed motion (Doc. 34) to stay the federal

18   proceedings so he could exhaust claim 4 in state court.

19   On February 2, 2010, this Court granted the stay (Doc. 35) and directed Petitioner to

20   provide a copy of his state habeas petition in this Court as well as to file monthly status reports.

21   Additionally, this Court ordered Petitioner to file a First Amended Petition within 30 days after

22   the California Supreme Court ruled on the state habeas petition.

23   Petitioner subsequently filed his state habeas petition and monthly status reports on that

24   petition.  (Docs. 36-40, 42.)

25   On August 3, 2010, this Court filed an order (Doc. 43) extending the stay and again

26   directing Petitioner to file a First Amended Petition within 30 days after the California Supreme

27   Court issued a ruling on the state petition.

28

3

1      On August 11, 2010, the California Supreme Court denied Petitioner's state habeas petition.

2  (Doc. 47, Attachment 2 [Cal. Supreme Court docket in Case No. S180244].)

3      On September 1, 2010, rather than file a First Amended Petition, Petitioner filed a motion

4  (Doc. 46) requesting to reinstate the claims he previously abandoned and dismissed: claims 5 and

5  6.  On October 1, 2010, Respondent filed an opposition (Doc. 47) to Petitioner's motion.  On

6  November 4, 2010, Petitioner filed a reply to the opposition (Doc. 48).

7      On May 26, 2011, this Court issued a report and recommendation that the District Court

8  deny Petitioner's motion to reinstate the previously dismissed claims.  (Doc. 51).

9      On August 4, 2011, the District Court formally adopted the report and recommendation

10 over Petitioner's objections (Doc. 52) and denied Petitioner's motion.  (Doc. 53).

11     On August 10, 2011, this court issued an order (Doc. 55) requesting Respondent to file an

12 Answer to the Petition.

13     Respondent respectfully submits the following in response to the Petition.  (This response is

14 essentially the same as the response that was previously filed (Doc. 19).)  Respondent notes that

15 Petitioner has not filed a First Amended Petition.  However, his previously unexhausted Claim 4

16 was included in the original Petition.

17 **STATEMENT OF FACTS[1]**

18     In November 2001, Danish police searched the home of Eggert and Bente Jensen in Tram,

19 Denmark.  Police discovered a computer in the Jensens' home, which police later determined had

20 large amounts of child pornography on the hard drive.  Included among the videos and

21 photographs found on the Jensens' computer were images of Petitioner engaged in sexual

22

23     [1] The Statement of Facts is taken directly from California Court of Appeal's Factual
Background (opinion at 3-4) in its unpublished opinion.  See, e.g.,  28 U.S.C.  § 2254(e)(1) (the

24 state court's determination of the facts is presumed to be correct); *Miller-El v. Cockrell*, 537 U.S.
322, 340, 123 S. Ct.  1029, 154 L.Ed.  2d 931 (2003) ("Factual determinations by state courts are

25 presumed correct absent clear and convincing evidence to the contrary"); *Sumner v. Mata*, 449
U.S. 539, 546-48, 101 S. Ct. 764; 66 L. Ed. 2d 722 (1981) (appellate courts can make factual

26 findings that are entitled to deference).  The Court of Appeal opted not to marshal the extensive
evidence about Petitioner's crimes in its Factual Background.  A much more detailed Statement

27 of Facts, which also includes record citations, is found in Respondent's Brief (Lodgment 4 at 3-
17.)

28

4

activities with Petitioner's daughter, M.W[2]. A forensic analysis of the computer revealed computer chats between Petitioner and the Jensens. In the chats, Petitioner described, in graphic detail, the ways in which he had molested M.W. as well as other victims. Danish police compiled evidence discovered on the Jensens' computer pertaining to Petitioner and provided it to U.S. law enforcement officials.

In January 2002, San Diego police arrested Petitioner. During a search of Petitioner's home, police discovered additional child pornography on Petitioner's computers, and on other devices used for storing digital information. Police estimated that the devices contained more than 900 pictures and more than 200 videos of minors under the age of 18 involved in sexual conduct. Police also discovered child pornography produced by Petitioner during a search of the home of Petitioner's friend, Lloyd Emerson.

In the Fall of 2005, over the course of a lengthy trial, the People introduced in evidence numerous videos and photographs containing child pornography that Petitioner had produced. Included among this evidence were videos depicting Petitioner having anal and oral sex with M.W. Numerous other photographs and videos depicted Petitioner engaged in various other forms of sexual conduct with M.W., as well as with other victims. M.W. and victims T.M and C.S. testified regarding the molestations. Victim K.W. testified that Petitioner took pictures of her and M.W. in the bathtub together.

**ARGUMENT**

**I.   THE ANTI-TERRORISM AND EFFECTIVE DEATH PENALTY ACT OF 1996 GOVERNS THIS CASE**

Petitioner filed his petition after the effective date of, and is thus subject to, the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). *See e.g.*, *Lindh v. Murphy*, 521 U.S. 320, 326, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997); *Weaver v. Thompson*, 197 F.3d 359, 362 (9th Cir. 1999). Under AEDPA, a petition for writ of habeas corpus must demonstrate that the state court's adjudication on the merits resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

---

[2] M.W was born in 1991 and was a minor at all times of the offenses. (17 RT 1793-94.)

1    Supreme Court of the United States" or was "based on an unreasonable determination of facts in

2    light of the evidence presented." 28 U.S.C. § 2254(d).

3       The "contrary to" and "unreasonable application" clauses contained in 28 U.S.C. § 2254(d)

4    have distinct meanings. *Williams v. Taylor*, 529 U.S. 362, 404, 120 S. Ct. 1495, 146 L. Ed. 2d

5    389 (2000). A decision is "contrary to" United States Supreme Court authority if it fails to apply

6    the correct controlling authority, or if it applies the controlling authority to a case involving facts

7    materially indistinguishable from those in a controlling case, but reaches a different result. *Id*. at

8    413-14. A decision is an "unreasonable application" of clearly established federal law if the state

9    court identifies the correct governing legal principle but unreasonably applies that principle to the

10    facts of that case. *Id*. at 413. Moreover, the application must be objectively unreasonable.

11    *Lockyer v. Andrade*, 538 U.S. 63, 123 S. Ct. 1166, 1175, 155 L. Ed. 2d 144 (2003).

12       Additionally, when a state court does not find a constitutional violation, a federal court may

13    still grant relief if the state court's decision "was based on an unreasonable determination of the

14    facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

15    Under AEDPA, a state court's factual findings are entitled to a presumption of correctness.

16    Therefore, a petitioner must prove the state court's factual findings erroneous by clear and

17    convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Taylor v. Maddox*, 366 F.3d 992, 999 (9th

18    Cir. 2004). Mixed questions of fact and law are reviewed under the "contrary to" and

19    "unreasonable application" clauses in 28 U.S.C. § 2254(d)(1). *Lambert v. Blodgett*, 393 F.3d

20    943, 976 (9th Cir. 2004). A state court's factual findings underlying its conclusion on mixed

21    issues are accorded a presumption of correctness. *Id*.

22       Because the California Supreme Court denied Petitioner's direct appeal petition for review,

23    this Court applies the AEDPA standard of review to the last reasoned opinion of the California

24    state courts. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-804, 111 S. Ct. 2590; 115 L. Ed. 2d 706

25    (1991) ("where there has been one reasoned state judgment rejecting a federal claim, later

26    unexplained orders upholding that judgment or rejecting the same claim rest upon the same

27    ground"). Accordingly, this Court looks at the Court of Appeal's opinion from the direct appeal

28

to determine whether the state courts applied controlling United States Supreme Court authority properly.

**II.   THE STATE COURTS REASONABLY APPLIED CONTROLLING UNITED STATES SUPREME COURT AUTHORITY IN HOLDING THAT PETITIONER'S CONFRONTATION RIGHTS WERE UNAFFECTED WHEN THE TRIAL COURT ADMITTED PETITIONER'S INTERNET CHAT WITH A DANISH CITIZEN WHO DID NOT TESTIFY AT TRIAL BECAUSE THE DANE'S STATEMENTS IN THE CHAT WERE NOT TESTIMONIAL**

Petitioner asserts that his confrontation rights were violated when the prosecutor introduced a transcript of an overseas Internet chat Petitioner had with a Danish citizen.  (Ground 1.)  The claim is without merit because the state courts reasonably concluded that nothing the Danish citizen said during the chat could be remotely construed as testimonial.  Therefore, introduction of the Danish citizen's statements from the Internet chat did not implicate Petitioner's confrontation rights.

**A.   Relevant Background**

At trial, the prosecution "presented in evidence a transcript of various computer chats that [Petitioner] conducted with Eggert and Bente Jensen.  The chats were generated using a computer chat program called 'ICQ,' which is shorthand for 'I seek you.'  Among the topics discussed in the chats were [Petitioner]'s sexual molestation of his daughter and the Jensens' sexual molestation of their daughter."  (Opinion at 5.)

**B.   Legal Discussion**

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  The Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had . . . a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54, 59, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). Only "testimonial" statements "cause the declarant to be a 'witness' within the meaning of the Confrontation Clause.  *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L. Ed. 2d 224 (2006).  "It is the testimonial character of the statement that separates it from other hearsay

7

1   that, while subject to traditional limitations upon hearsay evidence, is not subject to the

2   Confrontation Clause." *Id.*

3        Here, the Court of Appeal fully understood the United States Supreme Court's recent

4   Confrontation Clause jurisprudence.  The Court of Appeal explained,

5        The Sixth Amendment's Confrontation Clause provides, "In all criminal
    prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses

6   against him."  In *Crawford* . . ., the United States Supreme Court held that the Sixth
    Amendment bars "admission of *testimonial* statements of a witness who did not

7   appear at trial unless he was unavailable to testify, and the defendant had a prior
    opportunity for cross-examination."  (Italics added.) The *Crawford* court implied that

8   the Sixth Amendment does not bar the admission of *nontestimonial* hearsay:

9        "[N]ot all hearsay implicates the Sixth Amendment's core concerns.  An off-hand,
    overheard remark might be unreliable evidence and thus a good candidate for

10  exclusion under hearsay rules, but it bears little resemblance to the civil-law abuses
    the Confrontation Clause targeted.  On the other hand, *ex parte* examinations might

11  sometimes be admissible under modern hearsay rules, but the Framers certainly
    would not have condoned them.

12
         "The text of the Confrontation Clause reflects this focus.  It applies to 'witnesses'

13  against the accused -- in other words, those who 'bear testimony.'  [Citation.]
    'Testimony,' in turn, is typically '[a] solemn declaration or affirmation made for the

14  purpose of establishing or proving some fact.'  [Citation.]  An accuser who makes a
    formal statement to government officers bears testimony in a sense that a person who

15  makes a casual remark to an acquaintance does not.  The constitutional text, like the
    history underlying the common-law right of confrontation, thus reflects an especially

16  acute concern with a specific type of out-of-court statement." (*Crawford*, *supra*, 541
    U.S. at p. 51.)

17
         In *Davis* . . ., the court addressed whether statements made to law enforcement

18  personnel during a 911 call and at a crime scene, in two different cases, were
    testimonial, and thus subject to the requirements of the Sixth Amendment's

19  Confrontation Clause.  The *Davis* court began its analysis by clarifying that "the
    Confrontation Clause applies only to testimonial hearsay." (*Davis*, *supra*, 547 U.S. at

20  p. 823; see also *id.* at p. 821 ["It is the testimonial character of the statement that
    separates it from other hearsay that, while subject to traditional limitations upon

21  hearsay evidence, is not subject to the Confrontation Clause"].)  The court in *Davis*
    thus expressly held that which it had suggested in *Crawford*, namely, that

22  "nontestimonial hearsay is not subject to the Confrontation Clause."  (*U.S. v. Tolliver*
    (7th Cir. 2006) 454 F.3d 660, 665, fn. 2.)

23
    (Opinion at 5-7.)

24
         The foregoing demonstrates the clear understanding and awareness the Court of Appeal had

25  as to the Supreme Court's most recent Confrontation Clause precedents.  The court then disposed

26  of Petitioner's claim by applying the foregoing principles, explaining,

27

28

        8

Whether the Jensens' statements were testimonial and therefore subject to the requirements of the Confrontation Clause presents a question of law, which we review de novo. [Citation].)

[Petitioner] notes in his brief that during the computer chats, Eggert Jensen stated that his daughter had not seen him ejaculate because his wife, Bente Jensen, had warned her about it. [Petitioner] also notes in his brief that during the chats, he and Eggert Jensen discussed various topics relating to the manner in which they molested their daughters. However, [Petitioner] fails to demonstrate in his opening brief how any of the statements the Jensens made in the computer chats were testimonial. None of the statements to which [Petitioner] refers in his opening brief, such as those mentioned above, are testimonial in nature. They are not accusatory, were not made in a formal setting, and bear no resemblance to the "[v]arious formulations of th[e] core class of 'testimonial' statements," provided in *Crawford*, *supra*, 541 U.S. at page 51. (See *id.* at pp. 51-52 ["'ex parte in-court testimony or its functional equivalent -- that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially,' [citation]; 'extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions,' [citation]; 'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial,' [citation]]".) Rather, the Jensens' statements are akin to statements that the *Davis* court deemed "clearly nontestimonial." (*Davis*, *supra*, 547 U.S. at p. 825 [noting that "statements from one prisoner to another" were clearly not testimonial].) Accordingly, we conclude that the trial court did not violate [Petitioner]'s federal constitutional right to confrontation by admitting the Jensens' statements.

(Opinion at 7-8.)

Petitioner has failed to demonstrate how the Court of Appeal's analysis of his Confrontation Clause claim is contrary to, or an unreasonable application of controlling United States Supreme Court authority. Nor can he. As the Court of Appeal pointed out, nothing in the chat could be construed as testimonial or accusatory in nature. Jensen's statements were not made to a government officer but rather to his friend. As the United States Supreme Court observed, "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Crawford v. Washington*, 541 U.S. at 51. Thus, what Jensen said in his chats to Petitioner could not remotely be construed as testimonial in character. Indeed, nobody really cared what Jensen said to Petitioner; save for the fact that they gave context to Petitioner's own prurient words, Jensen's statements were largely immaterial. In sum, the Court of Appeal reasonably and properly applied controlling Supreme Court authority when it concluded that Jensen's statements during the chat

9

1   were not testimonial and therefore could not implicate Petitioner's confrontation rights.

2   Therefore, this Court should reject the claim.

3       **III.   PETITIONER'S CLAIM THAT THE TRIAL COURT ERRED IN ADMITTING
                VARIOUS PIECES OF EVIDENCE FROM JENSEN'S COMPUTER FAILS TO STATE
4               A FEDERAL QUESTION**

5           Petitioner makes a generalized claim that the admission of various pieces of evidence from

6   Jensen's computer violated his due process right to a fair trial.  Specifically, he asserts that

7   evidence was admitted without a proper foundation, without a proper showing of chain of

8   custody, and without proper authentication.  Petitioner further claims that the Internet chat was

9   not properly transcribed to afford him a meaningful appellate record.  (Ground 2.)  The admission

10  of evidence claims fail to state a federal question and therefore should be rejected.  Further, the

11  Internet chat was admitted into evidence and therefore, by operation of law, was fully part of the

12  appellate record.

13          The United States Supreme Court has emphasized that it "is not the province of a federal

14  habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*,

15  502 U.S. 67-68, 112 S. Ct. 475; 116 L. Ed. 2d 385 (1991).  Generally, admissibility of evidence

16  and foundational considerations are questions of state law that are not cognizable in habeas

17  review. *Johnson v. Sublett*, 63 F.3d 926, 931 (1995), relying on *Estelle v. McGuire*, 502 U.S. at

18  67-68; *see also Larson v. Palmateer*, 515 F.3d 1057, 1066 (2008).

19          Here, the Court of Appeal rejected all of Petitioner's claims with respect to the

20  admissibility of evidence obtained from Jensen's computer.  The Court explained that the

21  evidence was properly admitted under state law.  (Opinion at 8-16.)  Under AEDPA, no more is

22  required because this Court must defer to a state court's determination of state law. *See, e.g.*,

23  *Wainwright v. Goode*, 464 U.S. 78, 84, 104 S. Ct. 378, 78 L. Ed. 2d 187 (1983) ("courts may

24  intervene in the state judicial process only to correct wrongs of a constitutional dimension").

25          Moreover, Petitioner has made no effort to demonstrate how the Court of Appeal's

26  conclusions violated his constitutional rights.  Instead, he simply parrots a generalized claim that

27  the allegedly erroneous admission of the evidence "so infected the proceedings as to deny [him]

28  his rights under the Sixth and Fourteenth Amendments to a fair trial."  (Petition, Attachment A at

10

46.)  This is insufficient.  Generalized invocations to due process without specifics cannot state a

basis for federal habeas relief.  *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994).  Because the

evidence was properly admitted under state law, Petitioner has failed to show how his due process

rights were violated by the admission of the evidence.

Finally, Petitioner's claim that his due process rights to an adequate appellate record were

violated because the Internet chat was not transcribed by the court reporter is specious.  The

Internet chat was admitted into evidence and was therefore part of the appellate record.  As the

Court of Appeal recognized, due process requires "the state to furnish an indigent defendant with

a record sufficient to permit adequate and effective appellate review."  (Opinion at 16.)  This is a

correct statement of federal law.  *See Griffin v. Illinois*, 351 U.S. 12, 16-20, 76 S. Ct. 585 100 L.

Ed. 891 (1956); *Draper v. Washington*, 372 U.S. 487, 495-96, 83 S. Ct. 774, 9 L. Ed. 2d 899

(1963).  Here, the Internet chat was offered and admitted into evidence as Exhibit 85 and

therefore was part of the appellate record.[3]  (Opinion at 16-17.)  Consequently, Petitioner has

failed to demonstrate a violation of his due process rights with respect to the failure to have the

court reporter transcribe the Internet chat which was admitted into evidence and fully available

for review by appellate counsel.

In sum, this Court should reject Petitioner's admission of evidence claims because they fail

to state a federal question.  Additionally, because the Internet chat was admitted into evidence and

thus a part of the appellate record, this Court should reject Petitioner's claim that the appellate

record was incomplete.

### IV.   THE STATE COURTS REASONABLY CONCLUDED SUBSTANTIAL EVIDENCE SUPPORTED THE CHILD PORNOGRAPHY PRODUCTION CONVICTIONS, THE TYING AND BINDING ENHANCEMENT FINDINGS, AND THE SODOMY CONVICTION FOR COUNT TWO

Petitioner raises three claims of insufficient evidence.  He asserts the evidence failed to

support the child pornography production convictions because the images did not qualify as

pornographic under state and federal law.  (Ground 3.)  He claims the evidence was insufficient to

support the tying and binding enhancement.  Petitioner also raises an instructional error within the

_____

[3] In fact, Exhibit 85 was transmitted to the Court of Appeal.  (See Lodgment 9 at 3.)

context of this claim.  (Ground 7.)  He further claims the evidence failed to support the count two aggravated sexual assault.  (Ground 9.)  None of the these claims has merit.  The Court of Appeal properly applied the substantial evidence standard of review articulated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 318, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), when it concluded that substantial evidence supported the convictions and enhancement findings.

The United States Supreme Court has explained that when a federal court reviews a claim of insufficient evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. at 319.  This standard was adopted by the California Supreme Court in *People v. Johnson*, 26 Cal.3d 557, 575-77 (1980), and is the standard of review the California state courts use to evaluate sufficiency of evidence claims.

The AEDPA standard mandates a deferential review of a state court's application of *Jackson*.  *Juan H. v. Allen*, 408 F.3d 1262, 1274-75, n.13 (9th Cir. 2005).  Under AEDPA, a writ of habeas corpus may be issued on the grounds of insufficient evidence only if the state Court of Appeal applies the *Jackson* standard in an objectively unreasonable manner.  *Id.*; *see also Williams*, 529 U.S. at 412-13.

There is no dispute that California courts review claims of insufficient evidence using the standard enunciated in *Jackson*.  *See People v. Cuevas*, 12 Cal. 4th 252, 260-61, 48 Cal. Rptr. 2d 135 (1995); *People v. Johnson*, 26 Cal. 3d at 578.  In the instant case and as demonstrated below, the Court of Appeal reviewed the evidence utilizing the proper standard (opinion at 17-18, 35, 44) and found it sufficient to sustain the jury's verdicts and findings.  The Court of Appeal's application of *Jackson* and determination of the facts was reasonable.  Under AEDPA no more is required.  28 U.S.C. § 2254(d).

**A.    Substantial Evidence Supported the Child Pornography Convictions**

On direct appeal, as he does here, Petitioner challenged several of the child pornography production convictions for lack of evidence.  In addressing the claim, the Court of Appeal first set forth the statutory requirements to establish whether material constitutes child pornography. (Opinion at 18-20.)  This step was essential because the sufficiency of evidence inquiry must be made with reference to the statutory elements of the proscribed conduct.  *Juan H. v. Allen*, 408 F.3d at 1275, citing *Jackson*, 443 U.S. at 324 n.16.  The Court of Appeal then examined and analyzed the evidence supporting each of the challenged counts, observing,

> Count 7 is premised on a short video, approximately 13 seconds in length, entitled "Potty," which showed M.W. sitting nude on a toilet with her hands up.  While M.W. cannot actually be seen to be urinating in the video, the jury could have reasonably inferred that in taking a video of M.W. sitting nude on the toilet, [Petitioner] produced a video of "excretory functions performed in a lewd or lascivious manner." ([Cal. Penal Code] § 311.4, subd. (b).)

> Count 13 is premised on a series of nine photographs of M.W. and K.W. naked in a bathtub.  In one of the images, the girls are sucking on popsicles, and in two others each girl is holding a popsicle.  In some of the images the girls have their legs partially spread apart, and the camera angle is focused toward their genitals.  The jury could have reasonably determined that these  images depict sexual conduct based on the totally nudity, the use of objects suggestive of phalli, and the focal point of the photographs.

> Counts 20, 21, and 22 are based on a series of 85 photographs of M.W., J.R., and K.R.  In the images, the girls are naked and rubbing fingerpaint on each other while in various positions on a blue tarp.  Several of the photographs focus on the victims' genitalia.  In others, the girls have their legs spread open.  The full nudity, sexual poses, and conduct (playing naked in fingerpaints), all support the conclusion that the images constitute sufficient evidence of a violation of section 311.4, subdivision (b).

> Count 25 is based on a series of 11 photographs of T.M. either naked, or wearing only an open jacket.  One of the photographs focuses on her buttocks.  In another, she has her arms raised above her head, revealing developing breasts.  Several photographs depict T.M.'s genitalia with her legs spread apart.  The full and partial nudity depicted in the photographs, as well as the victim's poses, support the conclusion that the images constitute sufficient evidence of a violation of section 311.4, subdivision (b). Counts 31 and 32 are based on a series of 10 photographs of M.W. and T.M. naked in the bathtub.  In several of the photographs, the girls are sucking on candy canes.  In others, the focal point is either the girls' genital area or buttocks.  The jury could have reasonably determined that the images depict sexual conduct based on the totally nudity, the use of objects suggestive of phalli, and the focal points of the photographs.

> Count 40 is based on trial exhibit No. 116, which contains a series of 12 photographs of M.W. and W.W. in the bathroom.  In the photographs, M.W. is completely nude and W.W. is wearing only a t-shirt.  In one of the photographs, M.W. is pulling up W.W.'s shirt to reveal his genitals, in another she is grabbing his behind with her

13

hand, and in a third M.W. is sticking her buttocks out at the camera.  The jury could have reasonably determined based on the totally and partial nudity as well as M.W.'s poses and conduct, that the images depict sexual conduct.

Count 41 is based on a series of four photographs of M.W.  The photographs depict M.W. either fully or partially nude, at yearly intervals, from ages five through eight.  The first image was taken when M.W. was five years old.  In the photograph, she is nearly nude, with only a towel covering her head and her outstretched arms.  In the second picture, M.W., age six, is standing in the bathtub, with her genitals clearly visible.  In the third picture, M.W., age seven, is naked in the bathtub, looking up at the camera, sitting cross-legged.  In the final picture, M.W. is lying naked on a bed with her hands behind her head, revealing her full torso.  Her genitalia are clearly visible and appear to be the focal point of the image.  The jury could have reasonably, determined based on the totally nudity and the focal point of at least one of the photographs, that these images depict sexual conduct.

Finally, count 55 is based on 45 images of M.W.  In the photographs, M.W. is naked in various suggestive poses, wrapped partially in a translucent veil or in a fish net.  Several of the photographs reveal either her genitalia or buttocks.  The jury could have reasonably determined, based on the nudity, the suggestive poses, and the use of inappropriate attire, that the photographs depict sexual conduct.

After reviewing the photographs and the video, we conclude that there is sufficient evidence to support each of the convictions.

(Opinion at 20-23.)

In essence, Petitioner improperly asks this Court to reweigh the evidence fully reviewed by the Court of Appeal.  *Juan H. v. Allen*, 408 F.3d at 1274-75 (explaining the deference that a federal court sitting in habeas review pays to a state court's sufficiency of evidence determination under *Jackson*).  Petitioner has failed to show how the Court of Appeal's conclusion was contrary to, or an unreasonable application of the standard of review articulated in *Jackson*.

## B.   Substantial Evidence Supported the Tying and Binding Enhancement

On direct appeal, Petitioner claimed, as he does here, that the tying and binding enhancement was not supported by the evidence.  He specifically challenged that the enhancement required evidence that he rendered the victim more vulnerable by tying or binding her.  In a related vein, Petitioner claimed that the trial court should have provided an instruction to the same effect.  In rejecting Petitioner's claims, the Court of Appeal explained the statutory construction of the tying and binding enhancement for the One Strike Law and how the terms "tying" and "binding" are accorded their plain meaning under California law.  (Opinion at 37-39.)  The court set forth the evidence supporting the tying and binding allegations:

14

M.W. testified about several of the photographs taken by [Petitioner].  The photographs depict M.W. naked and tied up with rope.  In some of the photographs, M.W.'s hands are tied; in others, her arms are tied to her legs; in still others, her entire torso is encircled in rope.  With respect to each set of photographs, M.W. testified that [Petitioner] tied her up.  While testifying generally about the incidents in which [Petitioner] tied her up, M.W. stated that she was sometimes unable to untie the ropes, while at other times she was able to do so.  M.W. stated that occasionally the ropes hurt, and that she did "not usually" like being tied up.  On some occasions, when the ropes hurt her, M.W. would tell [Petitioner] to untie her.  M.W. stated that she recalled that [Petitioner] would do so immediately.  The People introduced the photographs of M.W. in evidence.  The photographs together with M.W.'s testimony constitute the evidence offered in support of counts 9, 10, 33, and 37.

With respect to count 1, the People played for the jury and offered in evidence a video entitled, "Bond 108."  In the video, M.W. is lying naked on a large cushion.  M.W. places her hands above her head, and [Petitioner] places handcuffs on her wrists.  [Petitioner] tickles M.W. while she is naked and handcuffed.  At the end of the video, [Petitioner] massages her genitals.

On cross-examination, M.W. was asked whether she remembered "any handcuffs."  M.W. responded, "I think there are -- I think I remember handcuffs.  They're like trick handcuffs, I think."  M.W. agreed with defense counsel's suggestion that she could push something and release the handcuffs.  She also responded in the affirmative to defense counsel's question, "You could get out of them anytime you wanted to; right?"

(Opinion at 35-36.)

In explaining that this constituted substantial evidence supporting the tying and binding

enhancement, the Court of Appeal observed,

We reject [Petitioner]'s claim that there is insufficient evidence to support the findings

because he did not intend to make M.W. more vulnerable by tying or binding her.  [Petitioner]'s

intent in tying and binding M.W. is irrelevant. [Citation.]

Assuming for the sake of argument that [under California law] the only tying and binding that is proscribed by section 667.61, subdivision (e)(6) is that which renders a victim more vulnerable, the jury could have reasonably found that the photographic evidence described above demonstrated that [Petitioner]'s tying or binding M.W. rendered her more vulnerable.  In many of the photographs, M.W.'s hands or legs are bound -- a state that [under California law] clearly demonstrates the increased vulnerability of a victim.  In other photographs, M.W. was even more elaborately constrained, with her torso fully encircled in rope.  In the video, M.W.'s wrists are bound together.  The jury plainly had a sufficient basis on which to find true the One Strike "tying or binding" (§ 667, subd. (e)(6)) allegations.

(Opinion at 39-40.)

As evident from the foregoing, the Court of Appeal properly applied *Jackson* in concluding

that substantial evidence supported the tying and binding enhancement.

15

To the extent Petitioner also contends that the trial court should have instructed the jury with a modified version of the tying and binding enhancement instruction to specifically include the language about the vulnerability of the victim, the claim fails to state a federal question.  The meaning of California state law as determined by the California state courts are binding upon the federal courts in habeas.  *Estelle v. McGuire*, 502 U.S. 67-68.  Indeed, "a state court's interpretation of state law including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."  *Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005).  Furthermore, to overturn a state court conviction on the basis of an erroneous jury instruction, the petitioner must establish "not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment."  *Cupp v. Naughten*, 414 U.S. 141, 146, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973).  A jury instruction violates the Due Process Clause of the Fourteenth Amendment if it relieves the state of its burden to prove every element of the charged offense beyond a reasonable doubt.  *Carella v. California*, 491 U.S. 263, 265, 109 S. Ct. 2419, 105 L. Ed. 2d 218 (1989).

Here, the Court of Appeal explained the requirements under California state law as to the tying and binding enhancement.  It then concluded that even if it assumed, without deciding, that the trial court were required to give a modified instruction as the vulnerability of the victim, the omission was harmless because there was overwhelming evidence that Petitioner restricted the victim's freedom of movement as required under the tying and binding enhancement allegation.  (Opinion at 40-41.)  Petitioner has not demonstrated how this conclusion, which was based upon state law alone, infringed his constitutional rights or somehow alleviated the state's burden in proving the allegation.

## C.   Substantial Evidence Supported the Sodomy Conviction for Count Two

Finally, Petitioner urged on direct appeal, as he does here, that the evidence failed to establish that he sodomized his daughter as charged in count two.  After explaining the statutory

16

requirements for sodomy, the Court of Appeal observed that substantial evidence supported the charge:

> [Petitioner] claims that there is insufficient evidence to establish that he penetrated M.W.'s anus with his penis.  [Petitioner] does not dispute that the People played a video for the jury entitled "butt fuck," that "shows [M.W.] naked and tied with rope, with [Petitioner] behind her making a rocking back and forth motion."  The video also shows [Petitioner] removing his penis from M.W.'s buttocks and ejaculating. While the video does not contain actual depictions of penetration, the jury could plainly infer from the video that [Petitioner] had penetrated M.W.  Further, in a July 10, 2001, chat with Eggert Jensen, [Petitioner] states that M.W., "Lets me cum in her butt only recently."  Accordingly, we conclude the People presented sufficient evidence that [Petitioner] sodomized M.W.

(Opinion at 45.)

It is readily apparent that the Court of Appeal again properly applied the *Jackson* standard of review in concluding that substantial evidence supported the jury's verdict that Petitioner sodomized his daughter as charged in Count two.  The court viewed the evidence in the "light most favorable to the prosecution" and reasonably concluded that the jury, a rational trier of fact, could find "the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. at 319.

In sum, this Court should reject Petitioner's sufficiency of evidence claims (Grounds 3, 7, and 9) because the Court of Appeal applied the *Jackson* standard of review in an objectively reasonable manner.

### V.   PETITIONER'S CLAIM THAT THE TRIAL COURT FAILED TO GIVE THE JURY A UNANIMITY INSTRUCTION FAILS TO STATE A FEDERAL QUESTION

Petitioner contends that the trial court failed to give the jury a unanimity instruction as to the charges for which the prosecutor presented multiple images for each count.  (Ground 4.)  The claim was not raised as a federal claim in the state courts and fails to state a federal question.

In his claim, Petitioner relies solely upon the California Constitution and its provision under Article I, section 16, requiring juror unanimity in criminal trials.  (Petition, Attachment A at 55-60.)  Indeed, Petitioner cannot cite a federal constitutional violation because the United States Supreme Court has never interpreted the due process or trial rights clauses to require juror unanimity in criminal cases.  *See Apodaca v. Oregon*, 406 U.S. 404, 406, 92 S. Ct. 1628, 32 L. Ed. 2d 184 (1972).

17

However, although Petitioner fails to cite to a constitutional right directly, the Due Process Clause of the Fourteenth Amendment does protect against the "arbitrary deprivation" of a liberty interest to which a defendant is "entitled under state law." *See Hicks v. Oklahoma*, 447 U.S. 343, 346, 100 S. Ct. 2227, 65 L. Ed. 2d 175 (1980). The relevant state law here is California's constitutional requirement entitling a criminal defendant to a unanimous jury.

In disposing of Petitioner's claim, the Court of Appeal explained that under California law, unanimity instructions are generally required except "where the offenses are so closely connected as to form a single transaction or where the offense itself consists of a continuous course of conduct. [Citation.]  'This exception arises in two contexts.  The first is when the acts are so closely connected that they form part of one and the same transaction, and thus one offense. [Citation.]  The second is when . . . the statute contemplates a continuous course of conduct of a series of acts over a period of time.'  [Citation.]"  (Opinion at 24-25.)

In explaining that unanimity instructions were not required for the child pornography and lewd acts counts that were supported by multiple discrete images, the Court of Appeal observed,

> With respect to the remaining counts, [Petitioner] was charged in counts 8 and 40 with posing a minor for the purpose of producing pornography ([Cal. Penal Code] § 311.4, subd. (b)).  Count 8 is based on three images taken from a video that depict a girl using a vibrator.  In the first two images, the vibrator is seen, and in the final image, the girl is wearing the same shirt as in the other images.  Count 40 is based on 12 photographs of W.W. and B.W. in the bathroom.

> Section 311.4, subdivision (b) generally prohibits individuals from having minors "pos[e] . . . for purposes of preparing any . . . image . . . involving . . . sexual conduct . . . ."  [Petitioner] was not charged with possessing a single, discrete piece of child pornography, but rather, with having committed the offense of posing a minor for the purpose of producing child pornography.  The evidence presented in support of each count constituted evidence of a single episode of posing for the purpose of producing child pornography.  Thus, no unanimity instruction was required.  To the extent that one could argue that each photograph captures a discrete act of "posing" (§ 311.4, subd. (b)), the acts were so closely connected as to form a single transaction, such that the continuous course of conduct exception applies and no unanimity instruction was required.

> With respect to counts 14, 15, 16, 18 and 19, [Petitioner] was charged with committing a lewd act upon a child ([Cal. Penal Code] § 288, subd. (a)).  Section 288, subdivision (a) provides in relevant part, "Any person who willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years."  While [Petitioner] notes that multiple photographs

18

supported each of the counts, the photographs that were introduced as to each count documented a single act of lewd conduct.  For example, [Petitioner] notes that the People presented exhibit Nos. 76 and 77 in support of count 14.  The images all appear to have been taken during a single molestation session. With respect to each of the other counts [Petitioner] challenges, each set of images appears to depict a single molestation session.  To the extent that each set of photographs could be said to depict a series of lewd acts, the acts were so closely connected as to form a single transaction, such that the continuous course of conduct exception applies and no unanimity instruction was required.

(Opinion at 25-27.)

Petitioner has not demonstrated how the Court of Appeal's conclusion constituted an arbitrary deprivation of a liberty interest under state law. *Hicks v. Oklahoma*, 447 U.S. at 346. The multiple images presented to support each individual count were simply a photographic documentation of a single transaction.  Thus, his claim necessarily fails.

**VI.   PETITIONER FAILED TO EXHAUST HIS CLAIMS THAT THE TRIAL COURT GAVE THE JURY DEFECTIVE VERDICT FORMS AND THAT THE JURY'S PROCEDURE FOR REACHING A VERDICT AS TO THE MULTIPLE VICTIM ENHANCEMENT WAS FLAWED**

Petitioner asserts that the court gave the jury defective verdict forms to make the special allegation findings.  Specifically he asserts that the language in the verdict form should have stated that the jury was making a "true or not true" finding rather than having the jury state that Petitioner "did or did not" engage in the special allegation conduct. (Ground 5.)  He also claims that the jury's procedure in making the multiple victim finding was flawed.  (Ground 6.) Petitioner raised both of these claims in his direct appeal to the Court of Appeal.  (Lodgment 3 at 60-70.)  However, he failed to include them in his Petitioner for Review in the California Supreme Court.[4]  (Lodgment 7.)  Consequently, these two claims are unexhausted. *Rose v. Lundy*, 455 U.S. 509, 515-17, 520, 71 L. Ed. 2d 379, 102 S. Ct. 1198 (1982).  Petitioner has failed to fairly present these claims to the California courts to give them "a full opportunity to pass on and correct the alleged constitutional errors." *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S. Ct. 1347, 158 L. Ed. 2d 64 (2004).

---

[4] Petitioner can still exhaust these claims by raising them in a habeas petition in the California Supreme Court.

Indeed, Petitioner, has previously dismissed these claims.  (Docs 31 and 32.)  Therefore, they are no longer part of the Petition (even though Petitioner has not filed a First Amended Petition.)

VII. **THE STATE COURTS REASONABLY CONCLUDED, CONSISTENT WITH CONTROLLING SUPREME COURT PRECEDENT, THAT THE TRIAL COURT DID NOT ERR IN PROVIDING THE JURY WITH NEUTRAL VERDICT WORKSHEETS DURING DELIBERATIONS**

Petitioner asserts the trial court erred in providing the jury with verdict sheets in tabular form and a document containing basic information as to each count.  (Ground 8.)  The claim is without merit.  Petitioner has failed to demonstrate that the Court of Appeal's conclusion that the trial court's actions, providing appropriate guidance to the jury in this complicated case, was contrary to, or an unreasonable application of established United States Supreme Court authority.

A. **Factual Background**

The Court of Appeal explained the factual background for this claim as follows:

> Prior to submitting the case to the jury, the court indicated to both parties that it intended to provide each juror with two documents, a "verdict worksheet" and a "worksheet."  The verdict worksheet listed each of the possible verdicts in the case in tabular format.  The worksheet set forth, as to each count, the count number, the charged offense and any lesser included offenses, a description of the charged offense taken from the verdict forms, the victim's name, and a blank space for the jurors to write notes.  The court provided the documents to the jurors in an effort to assist the jurors in "keep[ing] track of their own verdicts" in light of the "complexity of this case and the number of counts."  Defense counsel objected to the court providing the jurors with the documents.  The trial court overruled the objection.

(Opinion at 41.)

B. **Legal Discussion**

The United States Supreme Court has recognized, "[T]he right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors. 'The failure to accord an accused a fair hearing violates even the minimal standards of due process[.]'"  *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S. Ct. 1639, 6 L. Ed. 2d 751 (1961) (citations omitted).  Additionally, "[a]ny criminal defendant . . . being tried by a jury is entitled to the uncoerced verdict of that body."  *Lowenfield v. Phelps*, 484 U.S. 231, 241, 108 S. Ct. 546, 98 L. Ed. 2d 568 (1988).  As the Ninth Circuit Court of Appeals recently stated, "[c]oercion can occur when, for example, a district court tells a jury that it must reach a decision, [citation], a district court polls a jury before

20

1  it reaches a verdict, [citation] or a special verdict form reformulate[s] the elements of the crime

2  [citation]." *United States v. McCaleb*, 552 F.3d 1053, 1057-58 (9th Cir. 2009). However, the

3  potential coercive effect of a charge to a jury is to be evaluated "in its context and under all the

4  circumstances." *Lowenfield*, 484 U.S. at 239 (quoting *Jenkins v. United States*, 380 U.S. 445,

5  446, 85 S. Ct. 1059, 13 L. Ed. 2d 957 (1965)).

6       Here, Petitioner has not shown that the worksheets the trial court provided to the jury were

7  somehow coercive.  Indeed, the record would belie any such attempt.  As the Court of Appeal

8  explained, the trial court retained the inherent power to develop appropriate procedures to ensure

9  the proper administration of justice and further retained the authority to make reasonable and

10  objective comment on the evidence.  (Opinion at 42-43.)  In specifically addressing the propriety

11  of providing the worksheets, the Court of Appeal observed,

12      The trial court possessed the inherent authority to provide the worksheets to the jury
    as a method by which to assist the jury in managing the large number of verdicts in

13      the case.  With respect to the verdict worksheet, the document provided nothing more
    than the various possible verdicts, in tabular form.  We see nothing objectionable

14      about such a document, and [Petitioner] does not raise any specific objection
    concerning this document.

15

16      With respect to the worksheet, [Petitioner] claims that this document invaded the fact-
    finding province of the jury in that, for some of the counts, the worksheet provided

17      the name of the victim, while the information and the verdict forms did not.
    [Petitioner] argues that as to each count, the jury was required to find that there was a

18      victim.  He contends that in providing the name of the victim, "the court took the
    matter away from the jury and, in effect, negated the necessity of a finding on that

19      element of the referenced count."  We disagree.  Even assuming for the sake of
    argument that the People were required to prove the name of each victim, rather than

20      simply that a victim existed, the trial court's providing the name of each victim was,
    at the very worst, fair comment on the evidence.  (See [Cal. Penal Code] § 1093,

21      subd. (f) ["the judge may state the testimony, and he or she may make such comment
    on the evidence and the testimony and credibility of any witness as in his or her

22      opinion is necessary for the proper determination of the case"]; *People v. Sturm*
    (2006) 37 Cal.4th 1218, 1232 ["A trial court may comment on the evidence . . . but

23      such comments 'must be accurate, temperate, nonargumentative, and scrupulously
    fair.' [Citation]"].) [Petitioner] has failed to challenge, much less demonstrate, that the

24      trial court listing of the of victim's names was not an accurate and fair summary of
    the evidence.

25  (Opinion at 42-43.)

26       Petitioner cannot show that the worksheets the court provided the jury were somehow

27  coercive or that they violated his right to trial by jury.  The worksheets did not direct the jury to

28  reach a particular conclusion; they did not reformulate the necessary elements of the crimes and

21

allegations; and they did not alleviate the prosecutor's burden of proof. *See e.g. United States v. McCaleb*, 552 F.3d 1053, 1057-58. As the Court of Appeal observed, the "worksheets did not provide the jurors with a cue as to the verdict the court believed the jury should return." (Opinion at 44.) Nothing in the Court of Appeal's decision was contrary to established federal precedent. Thus, this Court should reject this claim.

## VIII. THE CALIFORNIA STATE COURTS REASONABLY CONCLUDED THAT THERE WAS NO BASIS FOR SEVERANCE

Petitioner contends that the state courts erred in denying his motion for severance. Specifically, he urges that the court should have severed the child pornography production counts from the more serious lewd acts counts. (Ground 10.) The contention is without merit. The state courts reasonably concluded that there was no infringement of Petitioner's due process rights in the joinder of the counts.

### A.   Procedural Background

The Court of Appeal explained that,

> [p]rior to trial, [Petitioner] filed a motion in which he requested that the court order that each of the counts in which the People sought a sentence of 15 or 25 years to life be tried separately from each other or, in the alternative, in smaller groupings than were presented in the information. [Petitioner] also moved to try all of the counts that charged him with producing child pornography ([Cal. Penal Code] § 311.4, subd. (b)) separately from those counts that carried a potential indeterminate life sentence. In his motion, [Petitioner] argued that the severity of the punishment for each of the "'life' counts" weighed in favor of granting the motion to sever. [Petitioner] also argued that certain of the "'life' counts" would present special problems unless severed. [Petitioner] noted, for example, that he might testify as to some counts and not others, and that he could potentially be prejudiced if he were required to invoke his privilege against self incrimination as to certain counts. In addition, [Petitioner] asserted that the charges for producing child pornography did not meet the statutory test for joinder. [Petitioner] claimed that the cumulative effect of the evidence also warranted severance. He asserted that the court was required to determine the potentially prejudicial impact of the cumulative effect of all of the evidence. The trial court denied the motion.

(Opinion at 46.)

### B.   Legal Discussion

Habeas relief on a joinder challenge can be granted only "if the joinder resulted in an unfair trial. There is no prejudicial constitutional violation unless simultaneous trial of more than one offense . . . actually render[ed] petitioner's state trial fundamentally unfair and hence, violative of

22

1   due process." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004) (as amended) (quoting

2   *Sandoval v. Calderon*, 241 F.3d 765, 771-72 (9th Cir. 2001) (as amended)); *see also United*

3   *States v. Lane*, 474 U.S. 438, 449, 88 L. Ed. 2d 814, 106 S. Ct. 725 (1986).  "The requisite level

4   of prejudice is reached only 'if the impermissible joinder had a substantial and injurious effect or

5   influence in determining the jury's verdict.'"  *Davis v. Woodford*, 384 F.3d at 638 (quoting

6   *Sandoval*, 241 F.3d at 772). The Ninth Circuit has explained that evaluating potential prejudice

7   from the joinder of charges requires reviewing the "cross-admissibility of evidence and the

8   danger of 'spillover' from one charge to another, especially where one charge or set of charges is

9   weaker than another."  *Id.*; *see Sandoval*, 241 F.3d at 772 ("We have recognized that the risk of

10  undue prejudice is particularly great whenever joinder of counts allows evidence of other crimes

11  to be introduced in a trial where the evidence would otherwise be inadmissible. Undue prejudice

12  may also arise from the joinder of a strong evidentiary case with a weaker one.") (citation

13  omitted); *Bean v. Calderon*, 163 F.3d 1073, 1084 (9th Cir. 1998).

14          Under California law, joinder of counts is generally preferred under California Penal Code

15  section 954.  However, joinder is inappropriate if a defendant can make "a clear showing of

16  potential prejudice" due to the consolidation of otherwise properly joined counts.  *People v.*

17  *Bradford*, 15 Cal. 4th 1229, 1315 (1997).  Similar to the considerations the Ninth Circuit has set

18  forth in evaluating prejudice from joinder, California has several factors that inform a court's

19  determination whether joinder would be prejudicial.  Such criteria include, whether "(1) evidence

20  on the crimes to be jointly tried would not be cross-admissible in separate trials; (2) certain of the

21  charges are unusually likely to inflame the jury against the defendant; (3) a 'weak' case has been

22  joined with a 'strong' case, or with another 'weak' case, so that the 'spillover' effect of aggregate

23  evidence on several charges might well alter the outcome of some or all of the charges; and (4)

24  any one of the charges carries the death penalty or joinder of them turns the matter into a capital

25  case.  [Citations.]"  *People v. Sandoval*, 4 Cal. 4th 155, 172-173 (1992).

26          Here, in disposing of Petitioner's misjoinder claim, the Court of Appeal applied these

27  various factors in analyzing whether he suffered prejudice from the joinder.  The court observed,

28

23

1
2

> [Petitioner] asserts that the joinder of all of the counts was improper under section 954. However, he provides no legal argument as to why this is so. Accordingly, we reject this argument.

3
4
5
6
7

> [Petitioner] also claims that he suffered prejudice from the trial court's denial of his motion to sever. The first step in assessing the propriety of a trial court's ruling on a motion to sever is to determine whether evidence as to all of the counts was cross-admissible. [Petitioner] acknowledges that "some of the evidence in this case would be 'cross-admissible,'" and fails to demonstrate that any of the evidence would not have been cross-admissible. [Petitioner] has thus failed to demonstrate that he was prejudiced by the trial court's denial of his motion to sever. (*Bradford*, *supra*, 15 Cal.4th at pp. 1315-1316.)

8
9
10

> Finally, [Petitioner] argues that the "most compelling reason to grant a severance in this case was the she[e]r number of counts and the shocking allegations underlying those counts." However, [Petitioner] provides no authority that severance is required where the counts are numerous or the allegations underlying those counts are unusually shocking, particularly where a defendant has failed to demonstrate a lack of cross-admissibility.

11
12

> Accordingly, we conclude that the trial court did not err in denying [Petitioner]'s motion to sever.

(Opinion at 48.)

13
14
15
16
17
18
19
20
21
22

Petitioner has not shown anything in the Court of Appeal's resolution of his misjoinder claim that is contrary to, or an unreasonable application of, controlling United States Supreme Court authority. Nor can he. As articulated above, the United States Supreme Court has stated that "an error involving misjoinder 'affects substantial rights' and requires reversal only if the misjoinder results in actual prejudice because it 'had substantial and injurious effect or influence in determining the jury's verdict.'" *United States v. Lane*, 474 U.S. at 449. Here, the Court of Appeal concluded that there was no misjoinder, as a matter of law, because of the cross-admissibility of the evidence as to the different charges. Further, there was nothing particularly inflammatory about any of the evidence presented in support of the child pornography counts as opposed to the lewd acts counts. All of the evidence was equally damning.

23
24
25
26
27
28

In a passing statement in his petition, Petitioner asserts that joinder of the counts "made it virtually impossible" for him to testify. (Petition, Attachment A at 89.) Although, Petitioner has a due process right to testify in his own defense, that right does not guarantee his ability to testify only to information favorable to his defense. *See Rock v. Arkansas*, 483 U.S. 44, 52, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987); *see also United States v. Alosa*, 14 F.3d 693, 696 (1st Cir. 1994)

24

1    (noting that the Fifth Amendment protects a defendant's right to choose whether to testify, but

2    "does not assure that the testimony will only benefit the defendant").  A defendant, therefore,

3    retains the ability to decide strategically whether to testify and thus risk revealing damaging

4    information.  *See Rock*, 483 U.S. at 53.

5          Sometimes joinder of counts may unduly affect a defendant's choice whether to testify. *See*,

6    *e.g.*, *United States v. Balzano*, 916 F.2d 1273, 1283 (7th Cir. 1990).  However, to obtain

7    severance because of this prejudicial effect, a defendant "must show that he has important

8    testimony to give on some counts and a strong need to refrain from testifying on those he wants

9    severed."  *See United States v. Nolan*, 700 F.2d 479, 483 (9th Cir. 1983).  In support of his

10   motion for severance, a defendant must specifically identify the testimony he would offer in his

11   defense so that the trial court can determine if that testimony is important enough to justify

12   severance.  *See United States v. Fenton*, 367 F.3d 14, 22 (1st Cir. 2004) (holding that a bald

13   assertion of innocence and unparticularized claim as to witness credibility was not specific

14   enough to mandate severance); *United States v. Alexander*, 135 F.3d 470, 477 (7th Cir. 1998)

15   (requiring specific examples of the exculpatory testimony the defendant would give).  Here,

16   Petitioner made no such showing in his severance motion before the trial court (Lodgment 1A

17   [Augmented Record Request] at 10), and has made no such showing in the instant petition.

18   Therefore, he has failed to show prejudice from the joinder of counts on the basis that his right to

19   testify was allegedly crippled.

20         In sum, the Court of Appeal applied controlling federal precedent appropriately and

21   Petitioner has failed to show that the joinder of the counts entitles him to federal habeas relief.

22   **IX.   PETITIONER HAS FAILED TO DEMONSTRATE AN ACCUMULATION OF ERRORS THAT
          DEPRIVED HIM OF A FAIR TRIAL**

23

24         Petitioner contends that the cumulative effect of the errors the trial court committed resulted

     in a deprivation of a fair trial.  (Ground 11.)  The claim is without merit.

25

26         "Cumulative error applies where, although no single trial error examined in isolation is

27   sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors has still

28   prejudiced a defendant."  *Whelchel v. Washington*, 232 F.3d 1197, 1212 (9th Cir. 2000) (internal

                                              25

quotation marks and alterations omitted).  This court asks whether the aggregated errors "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Parle v. Runnels*, 387 F.3d 1030, 1045 (9th Cir. 2004) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974)).  Further, "a habeas court may not grant the writ on the basis of errors of state law whose combined effect does not violate the Federal Constitution."  *Parle*, 387 F.3d at 1045 (citing *Lewis v. Jeffers*, 497 U.S. 764, 780, 111 L. Ed. 2d 606, 110 S. Ct. 3092 (1990)).

Here, as explained above, Petitioner has failed to establish a single constitutional error, let alone any errors of state law that could remotely violate his due process rights under the Constitution.  As the Court of Appeal observed, "We have concluded that nearly all of Whitmore's claims of error are without merit.  We have further concluded that any *assumed* errors that the trial court may have committed, whether considered individually or together, do not require reversal.  Accordingly, there was no cumulative error that requires reversal of the judgment."  (Opinion at 49, italics added.)  Just as the Court of Appeal failed to discern any accretion of errors that violated Petitioner's right to a fair trial, so too this Court should reject Petitioner's claim of cumulative error.

/ / /

/ / /

/ / /

/ / /

26

**CONCLUSION**

For the foregoing reasons, Respondent respectfully requests that the Petition for Writ of Habeas Corpus be denied, the proceedings be dismissed with prejudice without an evidentiary hearing, and that no certificate of appealability be issued from the denial of the writ.

Dated:  September 12, 2011                    Respectfully Submitted,

                                             KAMALA D. HARRIS
                                             Attorney General of California
                                             DANE R. GILLETTE
                                             Chief Assistant Attorney General
                                             GARY W. SCHONS
                                             Senior Assistant Attorney General
                                             KEVIN VIENNA
                                             Supervising Deputy Attorney General

                                             /s/ Christopher P. Beesley

                                             CHRISTOPHER P. BEESLEY
                                             Deputy Attorney General
                                             *Attorneys for Respondent*

CPB:cp
SD2009804607
80548021
Whitmore Memo of P&A.doc

(09-1324 MMM (WVG))